We have four oriented cases this morning. The first is No. 222299, Crown Packaging Technology, v. Belvac Production Machinery. Mr. Cullen. May I proceed, Your Honor? Yes. May it please the Court. Good morning. My name is Dan Gettle. I represent the plaintiff, the patentee in this case, and with me at counsel table is my partner, Jeffrey Lesovitz. Your Honors, this morning I'd like to, in my brief time, I'd like to focus on two issues raised in our briefing. The first regards the comprising limitation and the comprising argument laid out in the briefing. And the second is directed at the Doctrine of Equivalence analysis regarding the mounted on limitation. I think addressing those two limitations is kind of the cleanest path to resolving the appeal. As to the comprising limitation issue, the claims of both patents recite an assembly comprising multiple horizontal necking stages with certain characteristics. There's two characteristics here that are at issue or addressed in the briefing. The first characteristic is that the multiple horizontal necking stages have to be adapted to run at recited speeds of more than 3400 cans per minute. So that's the first characteristic relevant here. The second relevant characteristic is that the dies used in the multiple horizontal necking stages have to have a component inside the die that, quote unquote, defines a cylinder. That's the claim limitation. So thinking about those two characteristics, first, it's undisputed. The problem is, it seems to me you're arguing that one embodiment infringes some limitations and the other, that there's another embodiment that infringes other limitations and that somehow you can combine those and find infringement. Because in order to find infringement of the cylinder limitation, you have to dispense with the first die. In order to satisfy the 3400 limitation, you have to include the first die. So the accused product is the Bell-Vac Necker. The CMB 3400 is our product, the patentee's product. In the accused product, the Bell-Vac Necker, there's no dispute. So these necking machines are made up of these multiple horizontal necking stages. One machine has 12 or 13 stages. No dispute on that. It's also not disputed that... Was what I said accurate or inaccurate? I confess, Your Honor. You talked about two embodiments and that threw me. So I confess I didn't understand your question. Well, in order to find that the accused product infringes, you're saying we can dispense with the first die because it's a comprising claim. But then when you get to the second issue, the 3400 limitation or whatever it is, you include the first die. So that would seem to be problematic. No, Your Honor. That would be incorrect on this record. On this record, it's undisputed that all of these stages run at 3400 cans per minute. When this machine is in operation, stage runs... I thought the evidence was that without the first die, it didn't. The argument is that stages 2 through 12 need to have stage 1 in order to run. That's the same argument as saying the machine needs electricity in order to run. It's irrelevant to the case. How is that irrelevant to the case? Isn't that necessary to satisfy the claim? No, Your Honor. The claim is to an assembly comprising multiple horizontal necking stages. Stages 2 through 12 are multiple... But stages 2 through 12 don't produce 3400 a minute. They do, yes, Your Honor. It's undisputed. Only with one? When this machine is in operation, it runs at 3600 cans per minute. So by definition, stages 2 through 12 are adapted to run at 3600 cans per minute because that's what the machine turns out... But it won't run at 3400 per minute without the first die, without the first stage. It also won't run at 3400 cans per minute without electricity. Well, if it wasn't plugged in, it wouldn't be infringing either because it wouldn't be 3400 cans a minute. But when it is plugged in and when it is running, stages 2 through 12 are running at 3600 cans per minute. It's a comprising claim that something else is necessary for the machine to run is irrelevant for a comprising... Not if it's essential to the operation of the machine. How can something that has an essential element that's different from your invention infringe your invention? I'm sorry, can you repeat that? How can something that has an essential element that's different from your invention infringe your invention? I'm going to answer that question like this. In this case, it's not different than our invention. Our invention is a machine that can run at 3400, more than 3400 cans per minute. But it can't do that without the first stage, without the first die, right? And if the claim had been... Is the answer yes to that? It cannot do it without the first stage, just like the disclosed embodiment in the pad, Your Honor. It cannot do it without tapered first die. What you're doing is you're discarding the first stage when you're looking to whether it satisfies other claim limitations. You can't do that. I mean, it's got to be the same device that as a whole satisfies each of the claim limitations. This device as a whole satisfies each of the limitations, irrespective of stage one. Stages two through 12 meet all of the limitations of the claim. That's undisputed. There's been no case cited in this court from this case or in the district courts that says for a comprising claim, you have to show more than some elements in that accused device that meet all of the limitations of the claims. That's exactly this scenario. Stages two through 12 meet all of the limitations of the claims. That's been our theory of this case since the beginning. On summary judgment, at the hearing, we got an instruction on the word comprising. That's always been our theory of the case, Your Honors. On the other issue that I want to touch with my brief time left is the doctrine of equivalence analysis regarding the mounted-on limitation. For here, the argument is very straightforward. There's a lack of proof on the function. There's no evidence. There's no substantial evidence in this record as to the non-infringement position that Belovac was offering on the doctrine of equivalence on the function. Did Crown ask the district court to construe the mounted-on limitation? No, Your Honor. There's no evidence from Belovac's expert on what the function is, and there's no evidence of what the patent would say the result is that was put in by Belovac's expert. Didn't the Belovac expert agree with the Crown expert on the function portion? No. The Belovac expert actually specifically disagreed that that was the function. The Belovac's expert agreed that in the necking machine, the gear is attached to the shaft and it rotates. But Belovac's expert specifically disagreed. Can you point me to where in the record I can find that? Yes. It is at appendix 3486 to 87. Question, okay, and you agree with Mr. Walsh that mounting of the gear in the Belovac necker performs exactly the same function? I did not agree on the function. So this case is similar to the Aquatex case written by you, Judge Dyke, where there's not a linking between the claim element in the patent and the supposed equivalence in the accused machine. There's a lack of substantial evidence for that. In this case, Belovac's expert never laid out what the function was of the gear-shaft relationship, never laid out what the function of that was, skipped it completely, and on the result he said the result was different, but he never said different from what. He said the difference was that there's no shaft deflection in the accused product. The shaft deflection in gear alignment was the other thing he referenced. Shaft deflection causing gear alignment isn't even discussed in the patent at all, and their expert admitted that as well. So for the function-way result analysis, there's no evidence of what the function was, and you can see this right from the Jaymoor ruling. The lower court never refers to any function, and the way and the result on the way without a function, the question is the way of doing what. Belovac's expert never laid down the way of doing what. And on the result, again, the expert pointed to a result that was totally different than anything disclosed in the patent, admitted that there was nothing in the patent on shaft deflection. Counsel, what's the import, though, of the testimony on Appendix 3486, beginning at line 20, talking about the function? So I saw the portion you pointed us to, but what if you read just a little bit before that? Does that not address what would be the function of lying the gear? Sorry, Your Honor, I'm just going to grab that page.  So it's 3486 beginning at line 20. You pointed us to 3486 beginning at line 24 going on to the top of 3487. You're at line 20, Your Honor? Yes, that's correct. So, yeah, I see what he's saying, and I apologize for not pointing that out, but his testimony immediately following that, I'm not sure what he means when he says, answer, in that plain language, yes. I don't know what that means, but then the question came back and said, and you agree with Mr. Walsh that mounting on the gear in the Belovac necker performs exactly the same function, right? Answer, I did not agree on the function of your previous definition. No, I did not. He does not agree that the function is transferring rotational force from the gear to the shaft. He never agreed to that. But if you read what's on line 20, he essentially does seem to agree with it. I mean, maybe we're just reading this differently. It sounds like we are, but if you look at line 20, I do think there's a little something different there. I'll let you move on. I don't want you to get stuck on this. And with that, I'll reserve the rest of my time unless there's any further questions. Okay. Mr. Finkelstein. Good morning. May it please the court. Your Honor's questions with respect to Crown's appeal on the infringement issues go to the heart of the problem with the appeal. But I want to start with on sale bar because this is first and foremost an on sale bar case. Crown is already pursuing a continuation application in an attempt to circumvent the jury's verdict. There's a very real prospect that we'll be back here again. And this appeal, therefore, can and should be decided most comprehensively by finding these patents invalid based on Crown's pre-critical date commercial offer for sale of the invention. So counsel, do you agree that if we agree with you on the on sale bar argument, we do not need to reach the argument you raised with respect to written description? I do, Your Honor. We have to rule in your favor, right, not just send it back for a new trial or a trial on it. Because it went off on summary judgment. It went off on summary judgment. So if this court was to affirm the non-infringement verdict, I don't think there would be a remand opportunity for the on sale bar since it was raised. Why? It's a validity issue. It is a validity issue. It was raised as an affirmative defense, not as a counterclaim. But we would submit, Your Honor, that the record on on sale bar. But if we reach, I just want to make clear in my head, if we don't agree that the facts are sufficient to reverse outright and grant you summary judgment, we could still send it back for further trial. Yes, you could, Your Honor. And we've raised that issue in our brief. But we've also pointed out in our briefing that we believe the record is such on on sale bar that the most appropriate course would be for this court to reverse and render just as it did in the Junker case. And that's because the offer at issue here. Can we back up just one second? If I understand correctly, your expert looked at photographs of the device. And he was prepared to testify that the device shown in the photographs satisfied all the claim limitations. And there's also no dispute about ready for patenting. So we don't have any controversy about whether what was shown in the photographs would satisfy, would be anticipatory and satisfy the claim limitations, right? Correct, Your Honor. There was no issue with photographs. It was just the offer for sale itself. And there's no dispute that what was in the photographs is the same product that was in the quotations, right? There's no dispute. So the sole question that we have is whether what was shown in the photographs and what was included in the quotations was on sale within the many of our cases, right? That's exactly right, Your Honor. No dispute that it was a pre-critical date sale. No dispute over ready for patenting. No dispute that it was an invention. Okay. I don't understand how the device itself, which the judge said wasn't properly made part of the record, would show that it was on sale. You have to go to the documents for that, right? Correct, Your Honor. Our on-sale bar case is premised on the offer letter itself, this 11-page quotation that starts at Appendix 4724 in the record. Our on-sale bar case is entirely premised on that, and that was the document that the judge below addressed in denying our motion for summary judgment and granting summary judgment, we believe improperly, to Crown. Okay, but that quotation says it's governed by English law, but nobody seems to have paid any attention to that or thought that English law had any bearing on this question, right? That's correct, Your Honor. So I think under our cases we can assume that as a result of waiver we'd apply American law to that, right? That's correct, Your Honor, and that's what both parties and the district court did. And under American law, the question under this court's precedence is whether this commercial offer invited simple acceptance, and the fact is that it did. To accept this offer for sale, the customer, complete packaging machinery, was to do three things. It was to submit a purchase order. It was to make simultaneous payment of 50% of the purchase price, quote, with order, end quote, and it was to provide certain technical specifications. And the offer's requirement of partial payment with the purchase order is critical. It means that a contract was to be created and, in fact, partially performed upon complete packaging machinery's order itself before any subsequent written acceptance of that order by Crown. It also stated that manufacturing would commence immediately upon receipt of the order. So you not only have the offeree performing already, you have Crown, the offeror, performing already before you ever get to a written acceptance provision. So under our cases, this written acceptance provision doesn't necessarily prevent the formation of an offer or the creation of an offer for sale under Medicins and Hospira, but there we relied on other provisions of the contract, in essence, clarifying what was meant by written acceptance. If I understand the record here, what happened with respect to orders for this Necker machine in past instances is there's no evidence that there was ever a written acceptance. What there is is evidence that there was a written acknowledgment. Am I correct about that? There is no evidence that the offeree provided a written acceptance. But it did provide a written acknowledgment, right? There's no evidence of a written acknowledgment by the offeree either. There is the transmission of the offer itself. No, no, no, not in this case. Oh, I'm sorry. I'm looking to the past practice here. Yes. I'm looking at the past practice. There are several instances in which there was an offer to purchase from other parties. In the past, there's no evidence that that was followed by a written acceptance, but there is evidence that was followed by a written acknowledgment of the order, correct? That's correct, Your Honor, but after Crown entered the order into its system. That is correct. I think Your Honor's reference to the Medicines II case and Helsin is very appropriate because what the court dealt with in that case was a written reservation reserving the right to reject a purchase order or to accept, and this court relied on the fact that under the agreements in place in those cases, there was a best efforts requirement, a requirement to exercise commercially reasonable efforts on behalf of the offeror to fulfill the contract, and we have the very same thing here at Appendix 4732. Crown provides in this offer, quote, every effort will be made to carry out the contracts, which puts us squarely in the same framework. But I don't see that that provision really bears on this because that provision has to do with shortage of materials and things of that sort, so I don't think that particularly gets you very far. Your Honor, the provision itself, which is at Appendix 4732, says, quote, every effort will be made to carry out the contract, and then it lists a series of causes, and then at the end says, or other cause beyond our control. So it is all-encompassing, and if you follow the order of events of how this offer was going to be accepted, we are very much in the same situation as in Medicines II, even though there's not an executed contract. What happens here is you have the offer by Crown, you have simple acceptance by the offeree by submitting a purchase order, paying over a million dollars at that point in time, performing and submitting specification sheets. At that point, you have a contract. Does Crown, though, have a dispute with respect to the in-this-country sort of requirement for the pre-AIA 102B? Yes, Your Honor. Crown also raises the in-this-country issue, which the district court did not address, but which this court certainly can resolve because it turns on a pure dispute of law between the parties. And specifically, this court's precedence on the in-this-country language under pre-AIA 102B is clear. The offer simply must be directed to an offeree in the United States at its place of business. There's no question on the facts here that happened. This offer was addressed to Complete Packaging Machinery at its address in Colorado. It was sent to a CPM business email address, and if you look at Crown's customer list in connection with this quotation in Appendix 4763, they list Complete Packaging Machinery as based in the quote, USA. The dispute that Crown raises is trying to inject an additional requirement into the in-this-country language, a requirement that if the offered product is accepted, it's to be used in the United States. That's not what this court has held in In re Cabinet and in Hamilton Beach. Do we know what prompted this letter? We know that Crown was actively trying to sell its new 3400 Necker. Indeed, if we were in a post-AIA world, there's 13 additional offers. We do not have a document from Complete Packaging Machinery saying, please send it to us, but what we have is a very targeted communication only to them specifically. Right. This isn't just a list of products and prices on a website or a flyer that is just a catalog of merchandise. This is a letter directed to a company with prices, and the words, this offer, is generally in accordance with our conditions of sale. Absolutely, Your Honor. Do you think that's enough to be no material issue of fact? There is no material issue of fact, and as Your Honor pointed out, with respect to the terms itself, this court has addressed kind of the hallmarks of a commercial offer for sale, every single one of those hallmarks, and then some are in this offer. If that's an offer, does it even matter whether there's acceptance or not? No, Your Honor. It's well settled that offers for sale, just like for sale, constitutes an on-sale bar under 102B. Price, product description, quantity terms, delivery terms, terms of payment, manner of delivery, FCA, Shipley R. Packers, location of delivery, transfer of title. The document even has pages of what are called standard conditions of sale. We included in our briefing at page 63 a chart of this court's cases invoking the on-sale. Hypothetically, and I know this isn't in the record, but would it make any difference if Crown had just looked up all the various potential customers and sent out a form letter to every single one of them saying the same thing? Would that be more akin to the just list of products available? It would be more akin to that line of cases where you have blast promotions, and this court has said that's just mere advertising. Given the certainty of the terms in the offer itself, I think it very well still could constitute a commercial offer for sale and suggest that it would, but that would be a different factual circumstance. I see my yellow light is on. If I could reserve the remainder of my time for rebuttal, please. Okay. Thank you. Thank you, Your Honor. Mr. Kettle? Thank you, Your Honor. Can I come back to the comprising issue very briefly? Well, I don't think they really argued the infringement issue, so I think you have to confine yourself to that. Okay. Thank you, Your Honor. Your Honor, on the question about medicines and Helsins and what's the difference between this case and medicines and Helsins, there's a very big difference between this one-way document and the facts of medicines and Helsins. Well, I understand that, and I think all we really get from medicines and Helsins is that the mere fact that there's an acceptance provision in the contract doesn't mean that there's a lack of a commercial offer for sale. So we have to look at this contract, the practice under this contract and the terms, not a contract, but the offer, we have to look at the terms to see whether that acceptance provision really has any meaning. The witnesses testified that the sending of the acceptance is a response to the offer created to bind the agreement, and I don't quite see what there is in the contract which would prevent that from being the case because there isn't any evidence that there ever was a written acceptance in these other cases. There's just an acknowledgment, and an acknowledgment, according to the dictionary definition of acknowledgment, just seems to mean we've received the offer. It's not necessary to create a binding agreement. Okay. Thank you, Your Honor. Do you agree that the only issue in dispute with respect to the on-sale bar issue is whether the offer for sale of the machine was to a Colorado company that was a commercial offer for sale, and do you also dispute the in-this-country portion? We dispute both. We do not believe that this is But you don't dispute anything else with respect to the on-sale bar issue, correct? Correct. Okay. Yeah, just whether it amounts to an offer in the first place and whether that offer was in the United States. Turning to the in the United States Before you go on to that, just answer the question that I was asking you about. I'm sorry. Why isn't it sufficient here that the past practice was not to have a written acceptance but simply a written acknowledgment, which means we've received the offer? And why isn't that in conjunction with the testimony about the acceptance of the offer or the creation of the offer as being an offer for sale to create a binding contract sufficient? Well, Your Honor, we don't believe that this would put complete packaging in the position of mere acceptance because it specifically says that any purchase order is subject to our approval. Okay, but in the past, it was never an approval. It was just an acknowledgment. For CMB's practice, Your Honor? Yeah. But in those cases, there was a purchase order, so there's an offer to buy. That acknowledgment is the acceptance of the offer to buy because then they went down the road of creating the machine and selling it. Why isn't the purchase order an acceptance of the offer for sale? There was no purchase order in this case. Yeah, but if there could have been a purchase order, then that would be accepting the offer for sale. Sorry, I misunderstood your question. The reason is because of all of the elements in this offer that are still outstanding. First of all, we reserve the right to accept the purchase order, and the pricing terms are not completely laid out because there's a number of places in there that have to be announced. But there's a set price listed. There was a price for the machine listed, yes, Your Honor. Just to be clear, is your position, apart from the in the United States aspect of it, is your position that the only reason that this wasn't an offer for sale is that it said that it was subject to written acceptance? No, there's other reasons too. They're required to get information from the customer about where is it going to be used. There was a questionnaire that the customer needed to fill out in order to tell us. These are not cookie cutter machines. They're custom-made machines based on the requirements for the customer in terms of what can is going to be in there. I don't understand why that makes it not an offer. It just says we're offering you a machine, and if you have customization you want, you tell us. And we'll work on that. It's still an offer for sale of the basic machine. It has a price. It has packing charges. It does, Your Honor, but it has, first of all, And it calls in the last paragraph, this offer is generally in accordance with our conditions of sale. I don't understand how you get over the fact that it's describing itself as an offer. Well, first and foremost, there's a reservation of accepting the purchase order. And then there's the offer. That doesn't mean it's an offer. It means they may decline to accept the offer to buy. But it doesn't mean it's not an offer for sale. In order for it to be an offer for sale, simple acceptance would create a binding contract. If simple acceptance doesn't create a binding contract, and I see I'm out of time. I think I'm out of time. Don't worry about it. Simple acceptance. Continue as long as we have questions. I'm sorry to interrupt you, sir. Well, continue as long as we have questions. Thank you, Your Honor. I think I just answered the question. Did you want to say something on in this country? I do, Your Honor. To find that this offer for sale, even if it is an offer for sale, is in this country, would be contradictory to this court's approach in the Caterpillar case and in W.L. Gore. In the Caterpillar case, if the mere offer coming from outside the U.S. into the U.S. amounted to an offer for sale, then this court would not have required additional briefing to find out where was the machine used. And it was only after that briefing that this court found that the machine was in California. Caterpillar is a non-PREC case of ours, correct? It is. But W.L. Gore is not. That was a Judge Markey case where he found an offer for sale was not in the United States under facts like this, where the offer came from outside the U.S. into the U.S. He called it an offer for sale in W.L. Gore, and he said that that offer was not in the United States based on only that.  Thank you, Your Honor. Thank you. Mr. Pickleson? Judge Hughes, your point is exactly right. This is an offer for sale that could be accepted simply by the offeree submitting a purchase order, making simultaneous payment, and submitting the spec sheets. It has more details of a commercial offer for sale than virtually any other on-sale bar decision of this court that we could find, and the partial performance is really critical. Crown's position requires writing language out of this offer. The offer is very clear. As soon as the customer sends in its purchase order, it has to pay 50% of the price. It has to begin performing. As soon as the customer sends in its purchase order, Crown, the offeror, has to start manufacturing immediately upon receipt of the order. This offer contemplates a clear form of simple acceptance, and, in fact, you have partial performance by both parties at that point in time before you even get to a reservation of rights, and the reservation of rights falls squarely within the commercially reasonable efforts paradigm that we saw in medicines, too. Are there any open issues such that we would need to vacate and remand if we are agreeing with you on the on-sale bar, or could we straight reverse? You could certainly straight reverse, and that's what we would ask the court to do. With respect to the in-this-country language that Your Honors talked about, Hamilton Beach and In re Cabernet are very clear on the point as to what's required. The imposition of a use requirement when you're dealing with an offer for sale first doesn't make much logical sense because in most offer for sale situations, you're not going to actually have a sale, and if you're not going to have a sale, you're not going to have use. The non-precedential decision in Caterpillar, which Your Honor asked about, is not on point. Caterpillar is a for-sale case, but with respect to offer for sale, Caterpillar says, under the pre-AIA on-sale bar, if the offer for sale was made in this country, then the invention would be on sale in this country even if the invention was sold for use outside the United States. That's the issue we're dealing with. Caterpillar then went on to deal with a sale scenario, and what Caterpillar said is in the sale context, typically you're looking at transfer of title. There, the transfer of title was in Italy, so that couldn't qualify, and what this court held was that an alternative way to prove that an actual sale was in this country was to look at where the product was going to be used. That's not our situation here, and the Gore case is certainly not our situation here. Gore really is talking in terms of Section 102A, known or used in this country language, perhaps it's talking about public use under 102B. There's no discussion of the on-sale part of 102B in Gore. It's not even clear from Gore where the product is being used, but Gore doesn't come close to touching the facts that we're presented with here. Just as it is clear on the face of the offer that we're dealing with a commercial offer for sale, it's clear on the facts and under this court's precedent that that offer was in this country under the language of the statute, and therefore we would submit that this court should reverse and render judgment in our favor with respect to the on-sale bar issue. Okay, thank you. Thank both counsel. The case is submitted.